IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANDRA JACKSON SHEPPARD,
on behalf of herself and all others
similarly situated,

        Plaintiff,

v.

                                                                 No. Civ. 01-0078 MV\KBM

GARY M BOURGEOIS, et al.

        Defendants.

**MEMORANDUM OPINION AND ORDER**

        **THIS MATTER** comes before the Court on Defendants GE Capital Consumer Card Co.'s and General Electric Capital Corporation's Motion to Stay Proceedings and Compel Arbitration, filed March 19, 2001 **[Doc. Nos. 7-1 and 7-2]**; Defendants GE Capital Consumer Card Co.'s and General Electric Capital Corporation's Motion to Strike Plaintiff's Reply to Defendants' Reply in Support of Their Motion to Stay Proceedings and Compel Arbitration, filed May 23, 2001 **[Doc. No. 13]**; and Plaintiff's Motion to Waive Local Rule 7.6(b) and Motion for Order to Accept Plaintiff's Surreply, filed June 8, 2001 **[Doc. Nos. 18-1 and 18-2]**.

        The Court, having considered the motions, responses, replies, relevant law, and being otherwise fully advised, finds that Defendants GE Capital Consumer Card Co.'s and General Electric Capital Corporation's Motion to Stay Proceedings and Compel Arbitration is not well-taken and will be **DENIED**; Defendants GE Capital Consumer Card Co.'s and General Electric Capital Corporation's Motion to Strike Plaintiff's Reply to Defendants' Reply in Support of Their

Motion to Stay Proceedings and Compel Arbitration is well-taken and will be **GRANTED**; and Plaintiff's Motion to Waive Local Rule 7.6(b) and Motion for Order to Accept Plaintiff's Surreply is not well-taken and will be **DENIED**.[1]

## BACKGROUND

In her complaint alleging violations of the federal Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*; the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. § 57-12-10, *et seq.*; and the Texas Deceptive Trade Practices - Consumer Protection Act, TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*; and presenting common law tort claims, Plaintiff Sandra Jackson Sheppard makes the following factual allegations.

Plaintiff experienced excruciating pain on the right side of her mouth between January 18, 2000 and January 25, 2000. Plaintiff was unsuccessful in her attempts to get an emergency dental appointment through her health insurance plan. On January 25, 2000, Plaintiff found Defendant Gary Bourgeois's advertisement in the El Paso Yellow Pages. According to the advertisement, Dr. Bourgeois performed emergency root canals. Plaintiff called Dr. Bourgeois's office, explained the nature of the emergency, and got an appointment for that afternoon. Plaintiff was told that Dr. Bourgeois would accept her health insurance.

When she arrived at Dr. Bourgeois's office, she was told to complete a medical history and insurance information form, which she did. She also gave Dr. Bourgeois's staff her insurance card for them to copy. She was then taken into an examination room, where Dr. Bourgeois

---

[1] GE Capital Consumer Card Co. and General Electric Capital Corporation will henceforth be referred to collectively as "GE Capital." *See* Mot. to Stay and Compel Arbitration at 1 n.1.

examined her teeth and ordered a dental assistant to take x-rays of the right side of her mouth. Once the x-rays were taken, Dr. Bourgeois explained the results of the x-rays and stated that two root canals would have to be performed. Dr. Bourgeois also explained that treatment would require Plaintiff to return to his office one or two more times after the initial procedure. Dr. Bourgeois then performed the root canals.

After the procedure was completed, Dr. Bourgeois gave Plaintiff prescriptions for antibiotics and for pain medication and Plaintiff scheduled her next appointment. At this time, Dr. Bourgeois's personnel told Plaintiff that her insurance plan would not cover the procedure. Plaintif offered to pay for Dr. Bourgeois's services by making monthly payments and Dr. Bourgeois agreed to this arrangement. Shortly thereafter, Dr. Bourgeois's personnel told Plaintiff that Dr. Bourgeois had his own monthly credit plan and that under this plan, Plaintiff would pay no interest if she paid off the entire debt within one year and that interest would accrue on any portion of the debt remaining at the expiration of one year. They also informed Plaintiff that it did not matter if she paid the bill in one month or twelve months, so long as the entire debt was paid within a year.

Plaintiff agreed to pay according to this plan. Plaintiff alleges that she was under the impression that the credit was being offered solely by Dr. Bourgeois. She states that she does not remember being told anything about a third-party creditor. During this time, Plaintiff was still in pain from the procedure and the local anesthetic was wearing off. Dr. Bourgeois allegedly told her to "hurry up" so that she could fill her prescriptions before the local anesthetic wore off completely. Dr. Bourgeois's personnel gave Plaintiff a form to complete and allegedly told her that the form was solely for them to run a credit check on her. Because of her pain and the

urgency of the situation, Plaintiff states, she did not thoroughly read the form that she was handed.  A few minutes later, Plaintiff was allegedly told that her credit check revealed that she could be approved for the amount of the bill of $1,159.00 and that she would have a credit limit of $2,500.00.  Dr. Bourgeois's personnel prepared a credit slip for her signature.  No names appeared on the slip other than hers and Dr. Bourgeois's.

Apparently, the form that Plaintiff completed at Dr. Bourgeois's office was not actually for the purpose of permitting Dr. Bourgeois's staff to run a credit check on Plaintiff.  Rather, it was application for a credit card account with Defendant GE Capital.  Attached to the application form was a "condensed Cardholder Agreement," which contained the following provisions:

> **ARBITRATION**: This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.
>
> As used in this Arbitration Provision, the term 'Claim' means any claim, dispute or controversy between you and us arising from or relating to this Agreement, any prior agerement that you may have had with us or the relationships resulting from this Agreement or any prior agreement, including the validity, enforceability or scope of this Arbitration Provision, this Agreement or any prior agreement.  'Claim' includes claims of every kind and nature, including but not limited to initial claims, counterclaims, cross-claims, and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statute, common law and equity.  The term 'Claim' is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) the credit card account ('Account') created by this Agreement or any prior agreement or any balances on the Account, (b) advertisements, promotions or oral or written statements related to the Account, goods or services financed under the Account or the terms of financing and (c) your Application.
>
> . . .
>
> Any claim shall be resolved upon the election of you or us by arbitration pursuant to this Arbitration Provision and the Code of Procedure ('Code')

>of the National Arbitration Forum ('NAF') in effect at the time the Claim is filed.
>
>. . .
>
>IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE NAF CODE. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

*See* Decl. of Eric C. Berkowitz, Ex. B.

On or about February 25, 2000, Plaintiff received in the mail a credit card entitled "CareCredit, The Family HealthCare Card," along with a full version of the Cardholder Agreement.[2] The full version of the Cardholder Agreement contained an arbitration provision that was identical to the arbitration provision in the condensed Cardholder Agreement. Plaintiff alleges that she did not know why she received this card. After her root canal treatments were completed, Plaintiff asked Dr. Bourgeois's personnel if the card had anything to do with Dr. Bourgeois's office. Plaintiff was told that she did not need to use the card at their office but that she could simply complete another credit slip. Thus, although she did not use the credit card at Dr. Bourgeois's office, charges for Dr. Bourgeois's services were accruing on her CareCredit account. Plaintiff made several payments on the account before realizing that interest was

---

[2] Plaintiff's new credit card was "a private label credit card, which enables consumers to finance purchases of goods and services at certain businesses, including Dr. Gary Bourgeois." Mot. to Stay and Compel Arbitration at 2.

accruing on the debt.

Plaintiff, an attorney, then commenced this action by filing a *pro se* class action complaint, alleging violations of the federal Truth in Lending Act, the New Mexico Unfair Trade Practices Act, and the Texas Deceptive Trade Practices - Consumer Protection Act, and presenting common law tort claims.[3] Defendant GE Capital has now moved, under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3 and 4, to stay the proceedings and for an order compelling Plaintiff to submit her claims to arbitration.

## ANALYSIS

**A.     Motion to Stay and Compel Arbitration**

The Court is being asked to decide whether the FAA requires that Plaintiff be compelled to arbitrate her claims against GE Capital by virtue of the arbitration provision in the Cardholder Agreement. Section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 provides for suits to be stayed as to any issues "referable to arbitration," "until such

---

[3]     Plaintiff alleges in her complaint that Dr. Bourgeois was negligent in treating her and GE Capital states in a footnote that the arbitration provision in question applies to Plaintiff's claims against Dr. Bourgeois "to the extent that they arise from or relate to the Cardholder Agreement." Mot. to Stay and Compel Arbitration at 6 n.3. However, neither Dr. Bourgeois nor GE Capital has moved to compel Plaintiff to arbitrate her negligence claims against Dr. Bourgeois. GE Capital seeks an order compelling Plaintiff to arbitrate her claims against it. Therefore, the question of the arbitrability of Plaintiff's negligence claims is not currently before the Court.

arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Finally, Section 4 of the FAA gives federal district courts authority to compel arbitration under certain specific circumstances. Specifically, Section 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.[4] Therefore, under the FAA, if the Court is satisfied that the making of the arbitration agreement is not in issue, any issues that are referable to arbitration must be so referred. If the Court determines that the making of the arbitration agreement is in issue, the matter must proceed to trial.

Within the last several decades, the Supreme Court has expressed a policy that strongly favors arbitration of disputes. *See Circuit City Stores, Inc. v. Adams*, – U.S. – , 121 S.Ct. 1302, 1318 (2001) (Stevens, J., dissenting) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220 (1987); *Mitsubishi Motors Corp. v.*

---

[4] "If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof." *Id.*

*Soler Chrysler--Plymouth, Inc.*, 473 U.S. 614 (1985); *Southland Corp. v. Keating*, 465 U.S. 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

However, not all disputes are referable to arbitration.  As explained above, a matter is referable to arbitration under the FAA only if the making of the agreement is not in issue.  Therefore, the Court's first task in determining the arbitrability of a dispute is to make "a two-step determination: (1) whether the parties have agreed to arbitrate, and (2) if they have, whether the scope of the arbitration agreement encompasses the asserted claims."  *Belship Navigation, Inc. v. Sealift, Inc.*, 1995 WL 447656, *2 (S.D.N.Y. 1995); *see also Meher et al. v. The Terminix Int'l Co. L.P.*, 205 F.3d 444, 47 (2d Cir. 2000).  "Arbitration may not be compelled unless both conditions are met because an arbitration agreement is inherently contractual, and 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *Belship Navigation, Inc.*, 1995 WL 447656 at *2 (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986)).

Whether the parties have agreed to arbitrate is a question for the court, not the arbitrator, to decide.  *See First Options v. Kaplan*, 514 U.S. 938, 943 (1995) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); *see also Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir. 1985) ("a challenge based on fraud in the inducement of the whole contract (including the arbitration clause) is for the arbitrator, . . . while a challenge based on the lack of mutuality of the arbitration clause would be for the court."); *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211, 217 (S.D.N.Y. 1978) (citing *United Steelworkers v.*

8

*Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("That these issues are for the Court, rather than the arbitrators, to determine flows from the fact that the duty to arbitrate is contractual and a Court cannot compel a party to arbitrate a dispute it did not contractually agree to arbitrate.")  In determining whether there was an agreement to arbitrate, a court must apply traditional principles of contract interpretation.  *See Gateway Technologies, Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993, 996 (5th Cir. 1995) (citing *Mastrobuono*, 514 U.S. at 57.  Thus, the Court must now decide whether the making of the agreement is in issue, looking primarily to traditional principles of contract interpretation.  If the making of the agreement is in issue, the matter must proceed to trial for a determination as to whether there was an agreement to arbitrate.

     Defendants assert that "there can be no question that the parties agreed to arbitrate." Mem. of Law in Support of Mot. to Stay and Compel Arbitration at 11.  In support of this assertion, Defendants note that the Application that Sheppard signed states that "[i]f this application is approved, you agree to abide by the terms of the condensed Cardholder Agreement attached to this application and the full Cardholder Agreement that you will receive with your credit card (together, the 'Agreement')" and that "the Agreement contains an arbitration provision that may substantially limit your rights in the vent [sic] of a dispute, including your right to litigate in court."  *Id.*  Defendants also point out the general rule that parties are presumed to know the terms of agreements that they sign and are ordinarily thereby bound.  *See id.* at 11-12 (citing *Ballard et al. v. Chavez et al.*, 868 P.2d 646, 648 (1994); *Smith v. Price's Creameries*, 620 P.2d 825, 829 (1982); *Johnson v. Lynn Hickey Dodge, Inc.*, No. 97-6410, 1998 U.S. App. LEXIS 30653, *6 (10th Cir. Dec. 1, 1998)).

9

Defendants are correct that parties are generally presumed to know the terms of agreements that they have signed. Nonetheless, if a party, who is not herself negligent, has been deceived as to the nature of the agreement that she signed, the agreement is void. In such a case, there is no agreement at all and no terms for her to be presumed to know. *See* 2 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 6:59 (4th ed. 1991) ("If, without negligence on his part, a signer attaches his signature to a paper assuming it to be a paper of a different character, the paper is void."); *see also Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F2d 998, (11th Cir. 1986) (citing RESTATEMENT (SECOND) OF CONTRACTS § 163, comment a (1997)) ("Where misrepresentation of the character or essential terms of a proposed contract occurs, assent to the contract is impossible. In such a case there is no contract at all."); *Curtis v. Curtis*, 248 P.2d 683, 702-03 (N.M. 1952) ("the effect of fraud in the factum, or as sometimes called, fraud in the procurement, is to render the instrument so executed void ab initio.")

The Court finds that this is precisely the argument that Plaintiff is presenting in the matter *sub judice*. Plaintiff claims that Dr. Bourgeois's personnel handed her a form, stating that it was for the sole purpose of running a credit check on her to determine her eligibility to participte in Dr. Bourgeois's monthly payment plan when, in fact, the form was an application to receive a credit account with GE Capital. Plaintiff alleges further that she was in severe pain at the time and was under pressure, from Dr. Bourgeois, to hurry up and sign the form. This is a claim of fraud in the factum which, as explained above, "is not subject to resolution pursuant to an arbitration clause contained in the contract documents." *Cancanon*, 805 F.2d at 1000.

The Court finds, therefore, that Plaintiff has alleged sufficient facts to create a question as

10

to whether the parties agreed to arbitrate, placing the making of the agreement in issue. Whether Plaintiff was herself negligent in signing the form, and whether Plaintiff was in fact deliberately deceived, are questions that must be decided by the jury at trial. *See* 9 U.S.C. § 4; *see also Lee v. Pacific Bullion (New York) Inc.*, 788 F.Supp. 155, 158 (E.D.N.Y. 1992) ("Because Lee has raised a *bona fide* claim of fraud in the factum, this court must hold a trial, pursuant to 9 U.S.C. § 4, to resolve the dispute over the validity of the arbitration agreement."). Accordingly, the matter will proceed to trial on the issue of whether there are any issues that must be referred to arbitration. *See Matterhorn, Inc.*, 763 F.2d at 873 ("9 U.S.C. § 4 creates an explicit right to trial by jury in the proceeding to determine whether an order to arbitrate should be issued.").

**B.      Motion to Strike and Motion to Waive Local Rule 7.6**

The local rules of civil procedure allow for one response and reply to the response to be filed with respect to any motion. D.N.M. L.R.-Civ. 7.6(a). The rules do not allow for surreplies without leave of court. D.N.M. L.R.-Civ. 7.6(b). Plaintiff filed a surreply, and sought leave of court only after Defendants filed their objection to Plaintiff's surreply. Plaintiff sets forth no valid reason for her failure to include all her arguments in her response or for her failure to timely seek leave of court to file a surreply. Accordingly, the Court finds that good cause has not been shown and will grant Defendants' Motion to Strike and will deny Plaintiff's Motion to Waive Local Rule 7.6(b).

## CONCLUSION

**IT IS THEREFORE ORDERED THAT** the matter shall proceed to trial on the issues of whether arbitration should be compelled **[Doc. No.s 7-1 and 7-2]**. Defendants' Motion to

Strike **[Doc. No. 13]** is hereby **GRANTED**.  Plaintiff's Motion to Waive Local Rule 7.6 **[Doc. Nos. 18-1 and 18-2]** is hereby **DENIED.**

Dated this 31st day of August, 2001.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Plaintiffs' Attorney
        Sandra Jackson Sheppard, *Pro se*

Defendant's Attorney
        Mel E. Yost, Esq.
        Eric S. Berkowitz, Esq.
        Leonard J. Piazza
        Valerie R. Duvernay